THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



| | |
|---|---|
| JOHN PITTMAN, KENNETH SHEARER and BETTY KILGORE<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION, 100 F Street, N.E. Washington, D.C. 20549,<br><br>Defendant. | No. 3:13CV187 WHB-RHW |

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT
TO THE ADMINISTRATIVE PROCEDURE ACT**

Plaintiffs John Pittman, Kenneth Shearer and Betty Kilgore, for their complaint against Defendant, United States Securities and Exchange Commission ("SEC"), allege, by and through their attorneys, on knowledge as to Plaintiffs, and on information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Through Sarbanes Oxley, Congress created a non-discretionary obligation for the SEC to benefit investors harmed by securities violations with disgorged funds, penalties and interest, that are placed into a so-called "Fair Fund." The SEC's own regulations establish a clear timetable for the creation and approval of a plan to distribute those funds to harmed investors. However, the SEC's Office of Collections and Distribution (OCD) (now known as the Office of Distributions) regularly ignores its Congressional mandate and its own regulations and allows these funds to linger for years without distribution to the victims who are entitled to those funds. In many cases, especially settlements involving large amounts, Fair Funds go undistributed for four (4) years or more. Meanwhile, defrauded customers, most of whom are small investors who desperately need these funds, have no compensation for their loss and continue to suffer the consequences of securities fraud as they await distribution. Under the system created by Congress and administered by the OCD, these investors are entitled to the prompt and efficient receipt of their money.

2. The OCD's failure to promptly distribute Fair Funds is evidenced in the matter of $100 million paid into a Fair Fund for victims of securities violations by the investment company Morgan Keegan. In June 2011, the SEC, along with a task force of securities regulators from a number of states, including Mississippi, announced an agreement with Morgan Keegan to settle charges of securities fraud. As a result, in June 2011, Morgan Keegan paid $100 million into a

1

fund administered by the state task force and $100 million to the SEC which the SEC committed to a Fair Fund for the benefit of Morgan Keegan's defrauded customers. While the $100 million paid to the states was promptly and efficiently distributed to harmed investors – checks were mailed in November 2012 – to date, the OCD has failed to even propose a plan of distribution for the corresponding $100 million Fair Fund, as required by law.

3. Under the Administrative Procedure Act, 5 U.S.C. § 706(1), Plaintiffs seek and are entitled to an order declaring that the OCD's repeated failure to file a plan of distribution in relation to the Morgan Keegan Fair Fund is unreasonable and unlawful. Plaintiffs further seek an order compelling the OCD to file a plan of distribution for public comment in accordance with applicable regulations, within thirty (30) days of this Court's order.

## II.  PARTIES

4. Plaintiff John Pittman is a resident of Mississippi and a customer of Morgan Keegan who is entitled to compensation from the subject Fair Fund.

5. Plaintiff Kenneth Shearer is a resident of Mississippi and a customer of Morgan Keegan who is entitled to compensation from the subject Fair Fund.

6. Plaintiff Betty Kilgore is a resident of Mississippi and a customer of Morgan Keegan who is entitled to compensation from the subject Fair Fund.

7. Defendant SEC is (and was at all relevant times) an agency of the United States government subject to the Administrative Procedure Act. 5 U.S.C. § 500 *et seq*. The SEC was created in 1934 by the Securities Exchange Act. 15 U.S.C. § 78d.

## III.  JURISDICTION AND VENUE

8. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 500, *et seq*. Jurisdiction therefore lies in this Court under 28 U.S.C. § 1331.

9. Each Plaintiff has standing to bring this suit.

10. Plaintiffs John Pittman, Kenneth Shearer and Betty Kilgore are individual investors who have suffered monetary loss as a result of the securities violations of Morgan Keegan. Each investor is entitled to a part of the $100 million Fair Fund held by the SEC.

11. This is an action against an agency of the United States for declaratory judgment and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706(1). Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(c).

## IV. BACKGROUND

12. The SEC's primary mission is to protect investors and maintain the integrity of the securities markets. When individuals or firms are found to have violated securities laws, the SEC often orders civil monetary penalties and seeks ill-gotten financial gains, or disgorgement, from violators.

### A. The SEC has a non-discretionary, mandatory obligation to create and distribute Fair Funds to benefit securities victims.

13. In 2002, Congress passed the Sarbanes-Oxley Act, Pub.Law 107-204 Sec. 1(a), July 30, 2002, to address corporate malfeasance and restore investor confidence in the United States securities markets. Sarbanes-Oxley established numerous reforms to increase investor protection, including 15 U.S.C. 7246(a), the Federal Account for Investor Restitution provision, commonly known as the "Fair Fund" provision. This provision requires that if the SEC combines civil monetary penalties, disgorged funds, and other donations into "Fair Funds" it must be distributed for the benefit of investors who suffer losses resulting from fraud or other securities violations.

14. This statutory obligation is found in the clear language used by Congress in Sarbanes-Oxley:

> If...the Commission (SEC) obtains a civil penalty against any person for violation of [securities] laws, the amount of such civil penalty *shall*, on the motion or at the direction of the Commission, be added to and become part of a disgorgement fund or other fund established for the benefit of the victims of such violation.[1]
> (..)
> The Commission is authorized to accept...for a disgorgement fund described in subsection (a)...gifts, bequests and devises of money...and they *shall* be deposited in such fund and shall be available for allocation in accordance with subsection (a).[2]

15. In 2007, the SEC created the Office of Collections and Distribution (OCD) (now known as the Office of Distributions) to manage the collection of penalties and disgorgement and speed the process of returning funds back to harmed investors. The OCD is responsible for the monitoring of all Fair Funds and for collecting and distributing both civil monetary penalties and disgorged funds for the benefit of harmed investors.

16. Pursuant to Sarbanes-Oxley, Congress requires the SEC to exercise its enforcement powers to "efficiently, effectively, and fairly provide restitution for injured investors."[3]

17. Pursuant to its mandate under Sarbanes-Oxley, the SEC promulgated regulations governing the creation and implementation of Fair Funds.[4]

> [I]n any agency process...in which the Commission...issues an order requiring the payment of disgorgement by a respondent and also assessing a civil money penalty...the Commission may order that the amount of disgorgement and of the civil penalty...be used to create a fund for the benefit of investors who were harmed by the violation.[5]

---

[1] 15 U.S.C. §7246(a) (emphasis added).
[2] 15 U.S.C. §7246(b) (emphasis added).
[3] 15 U.S.C. §7246(c)(1)(A). Further, §7246(c)(a)(B) imposes a non-discretionary obligation on the SEC to review and analyze methods to improve the collection rates for civil penalties and disgorgements: the Commission must report its findings to the Committee on Financial Services of the House of Representatives" and other government entities within 180 days of July 30, 2002. *See* 15 U.S.C. §7246(c)(a)(B).
[4] 17 C.F.R. 201.1101.
[5] *Id.*

18. Once the SEC orders the creation of a Fair Fund, applicable regulations specify a time-frame in which OCD officials must submit a proposed plan specifying the manner in which the funds are to be distributed to aggrieved investors. 17 C.F.R. § 201.1101(a) provides that "the Division of Enforcement shall submit a proposed plan no later than 60 days after the respondent has turned over the funds or other assets pursuant to the commission's order imposing disgorgement."

19. Applicable regulations also set out specific provisions that must be included in any plan of distribution, including specifications as to who is eligible to receive payment from the fund, the manner of notice to potential claimants and claims procedures.[6]

20. Once submitted, the plan of distribution is made available for public comment for a period of thirty (30) days, and is then subject to approval by each member of the SEC before being finally implemented.[7]

### B. The SEC routinely delays distribution of Fair Funds for years in violation of its statutory obligation.

21. Despite a clear Congressional mandate to return Fair Funds to defrauded investors and despite repeated reports to Congress from the United States Government Accountability

---

[6] 17 C.F.R. 201.1101(b)1-7 provides that the distribution plan shall, unless otherwise ordered contain:
   (1) Procedures for the receipt of additional funds, including the specification of any account where funds will be held, the instruments in which the funds may be invested; and, in the case of a Fair Fund, the receipt of any funds pursuant to 15 U.S.C. 7246(b), if applicable;
   (2) Specification of categories of persons potentially eligible to receive proceeds from the fund;
   (3) Procedures for providing notice to such persons of the existence of the fund and their potential eligibility to receive proceeds of the fund;
   (4) Procedures for making and approving claims, procedures for handling disputed claims, and a cut-off date for the making of claims;
   (5) A proposed date for the termination of the fund, including provision for the disposition of any funds not otherwise distributed;
   (6) Procedures for the administration of the fund, including selection, compensation, and, as necessary, indemnification of a fund administrator to oversee the fund, process claims, prepare accountings, file tax returns, and, subject to the approval of the Commission, make distributions from the fund to investors who were harmed by the violation; and
   (7)  Such other provisions as the Commission or the hearing officer may require.

[7] *Id.*

Office identifying unacceptable delays in the distribution of collected Fair Funds to harmed investors, the OCD continues to unreasonably delay the distribution of Fair Funds to victims.

22. An August 2005 United Stated Government Accountability Office (GAO) report on the SEC's implementation of Sarbanes-Oxley's "Fair Funds" provisions concluded that "the SEC has successfully used Fair Funds, *but distribution has been slow*."

> At the time of our review, although SEC has collected money for 73 of the 75 cases they identified, approximately $60 million *from only one other case* were being readied for distribution.[8]

23. The August 2005 GAO report concluded that:

> The Fair Fund provision has allowed for the potential for greater return of monies to harmed investors from securities laws violators . . . Nevertheless, to date, the majority of the monies collected under the provision have not been distributed to harmed investors . . . [B]ecause of SEC's traditional focus on deterring fraud and the relatively few distributions that have taken place, *we are concerned that SEC may not be able to ensure the timely distribution of the growing sum of money that has been collected as a result of the establishment of Fair Funds.*[9]

24. In April 2010, the GAO again reported to the House Subcommittee on Oversight and Investigations Committee on Financial Services. In that report the GAO concluded that:

> Since 2007, fewer Fair Funds have been established and the collection and distribution of Fair Funds have increased, *but many Fair Funds continue to remain open and active for years*. From 2002 through February 2010, $9.5 billion in Fair Funds were ordered, with the majority of this total ordered prior to May 2007. Since that date, only $521 million, or less than 6 percent, of total Fair Funds have been ordered. Of the $9.5 billion total Fair Funds ordered, $9.1 billion (96 percent) has been collected and $6.9 billion (76 percent) of the Funds collected has been distributed. Although the percentage of Fair Funds distributed has increased, there are many Fair Funds that remain open and active for years. *For example, our analysis of SEC data shows that of the 128 ongoing*

---

[8] August, 2005 GAO Report to Congressional Requesters, GAO-05-670, *SEC and CFTC Penalties: Continued Progress Made in Collection Efforts, but Greater SEC Management Attention is Needed* ("2005 GAO Report"), at 29-30.
[9] 2005 GAO Report at 34. (emphasis added).

6

*Fair Fund cases, over half have been ongoing for more than 4 years.*[10]

25. A review of the on-line data made available on the SEC's Fair Fund proceedings indicates that for large settlements in the $70- $125 million range, the length of time between the date of an order establishing a Fair Fund and the date a proposed plan of distribution is submitted for approval is between 1.5 to 4 years. As of February 28, 2013, there are 32 settlements awaiting a proposed plan of distribution. The oldest of these was ordered in July 2004, more than eight years ago.

### C. The SEC and state regulators brought an enforcement action against Morgan Keegan for securities fraud, collecting $200 million in July 2011 to be distributed to victims.

26. On April 7, 2010, the SEC initiated an enforcement proceeding against Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., James C. Kelsoe, Jr., and Joseph Thompson Weller for securities violations.[11]

27. The SEC brought its enforcement action against Morgan Keegan in coordination with the Financial Industry Regulatory Authority and a task force of state regulators from Alabama, Kentucky, Mississippi, Tennessee and South Carolina.

28. These Memphis-based firms, along with their former portfolio manager and comptroller (collectively "Morgan Keegan") were accused of causing the false valuation of subprime mortgage backed securities in five funds managed by Morgan Asset Management from January 2007 to July 2007. The SEC charged that Morgan Keegan failed to employ reasonable pricing procedures and consequently did not calculate accurate "net asset values" for the five

---

[10] April 22, 2010 GAO letter to Hon. Dennis Moore, Chairman, Subcommittee on Oversight and Investigations Committee on Financial Services House of Representatives, GAO-10-448R, SEC Fair Fund Collection and Distribution, at 3. (emphasis added).
[11] Morgan Asset Mgmt., SEC File No. 3-13847 (April 2010).

funds at issue. Morgan Keegan nevertheless published the inaccurate daily net asset values and sold shares to investors based on the inflated prices.[12]

29. On June 22, 2011, the SEC announced that, among other non-monetary provisions, Morgan Keegan agreed to pay $200 million to settle all charges. In announcing the settlement, Robert Khuzami, Director of the SEC's Division of Enforcement, explained:

> The falsification of fund values misrepresented critical information exactly when investors needed it most – when the subprime mortgage meltdown was impacting the funds. *Such misconduct does grievous harm to investors.*[13]

30. Under the terms of the settlement, Morgan Keegan paid $100 million into a state fund to be distributed to investors. The remaining $100 million was paid to the SEC in the form of disgorgement of $20,500,000, pre-judgment interest of $4,500,000 and a civil penalty of $75,000,000.[14] Both the payment into a state fund of $100 million and the payment of $100 million to the SEC were required to be made by Morgan Keegan within 10 days of the order imposing remedial sanctions, entered on June 22, 2011.

31. As to the payment of $100 million to the SEC, the June 2011 Order provides that "Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 . . . a Fair Fund is created for the disgorgement, interest and penalties [levied against Morgan Keegan]."[15]

32. The June 2011 Order further provides:

> The disgorgement, interest, civil penalties, and any other funds which may be paid to the Fair Fund through or as a result of related actions, shall be aggregated in the Fair Fund, which shall be maintained in an interest-bearing account, and shall be distributed

---

[12] *Id.*
[13] June 22, 2011 SEC press release: *Morgan Keegan to Pay $200 Million to Settle Fraud Charges Related to Subprime Mortgage-Backed Securities.* Available at http://www.sec.gov/news/press/2011/2011-132.htm (emphasis added).
[14] Morgan Asset Mgmt., SEC File No. 3-13847 (June 2011) ("June 2011 Order").
[15] *Id.* at 19.

pursuant to a distribution plan (the "Plan") to be administered in accordance with the Commission Rules on Fair Fund and Disgorgement Plans. A Fund Administrator shall be appointed by the Commission. The Administrator shall identify the investors in the Funds who suffered losses as a result of the violations determined herein, evaluate investor claims and propose and effectuate a plan to distribute the Fair Fund resulting from this Order. The Fair Fund shall be used to compensate injured customers for their loss.[16]

33. In accordance with 17 C.F.R. § 201.1100 and the June 2011 Order, the SEC had an obligation to create a plan of distribution for public comment within 60 days from the date Morgan Keegan paid $100 million to the SEC in disgorgement, interest and penalties. The deadline for submission of a plan of distribution of the Morgan-Keegan Fair Fund was September 2011.

### D. The $100 million in state funds resulting from the Morgan Keegan settlement was distributed to injured investors in a timely fashion.

34. A distribution plan for the $100 million state fund was approved by the states of Alabama, Kentucky, Mississippi, Tennessee and South Carolina in December 2011. Notice to effected investors, along with proof of claim forms, was provided in February 2012. Claims forms for distribution from the state fund were required to be submitted in June 2012.

35. In November 2012, a total of 50,167 checks were mailed to injured investors who filed qualifying claims for a portion of the state fund. These checks totaled $100,082,703.

36. Compensation from the state fund, while significant, leaves many investors injured by Morgan-Keegan's fraud undercompensated. For example, 2,190 claims by accounts originating in Mississippi received a total payment of $5,130,000 from the state fund. The vast majority of these accounts received less than 10% of their total estimated losses in payment from the state fund.

---

[16] *Id.*

9

### E. The SEC has failed to act to create a plan of distribution of the Morgan-Keegan Fair Funds.

37. Pursuant to the SEC's own regulations a plan of distribution related to the Morgan-Keegan Fair Fund was required to be filed in September 2011. No distribution plan was provided at that time. Belatedly, in December 2011, the SEC sought an extension of the deadline for submission of a plan of distribution.[17]

38. By Order dated December 8, 2011, the OCD was granted an extension until September 2012 to file such a plan – a full year after it was originally due. The December 2011 Order also imposed a non-discretionary obligation for the OCD to advise the SEC as to its progress toward the development of a proposed distribution plan on or before March 5, 2012, and again on or before June 5, 2012.[18]

39. The OCD filed no report concerning its progress toward filing of a plan of distribution on March 5, 2012, nor did it file such a report on June 5, 2012 or on any date subsequent.

40. The OCD failed to provide a proposed plan of distribution in September 2012. The OCD never sought an extension of the September 2012 deadline and, to date, has not proposed a plan of distribution.

### F. The SEC's failure to act has caused, and continues to cause, harm to Plaintiffs.

41. Through Sarbanes Oxley, Congress created a non-discretionary obligation on the part of the SEC to distribute Fair Funds to those harmed by securities violations. Regulations promulgated pursuant to Sarbanes Oxley establish a clear timetable for the creation and approval of a plan to distribute those funds to harmed investors. Under the term of the Morgan Keegan

---

[17] Morgan Asset Mgmt., SEC File No. 3-13847 (December 2011) (the "December 2011 Order").
[18] *Id.* at 2

settlement, the SEC committed itself to the establishment of a Fair Fund for harmed investors and thereby to the prompt and efficient distribution of those funds. The OCD's repeated failure to file such a plan and its repeated disregard for numerous deadlines associated with the creation of such a plan of distribution is unreasonable and unlawful.

42. In Mississippi, two thousand and fifty-one (2,251) claims were submitted under the fund administered by the state task force. From the state fund, two thousand one hundred and ninety (2,190) accounts received a distribution check for a total of $5,130,000.00.

43. Through his Morgan Keegan investments, Plaintiff John Pittman suffered a loss of $30,634.63 and is entitled to receive compensation from the Fair Fund.

44. Through his Morgan Keegan investments, Plaintiff Kenneth Shearer suffered a loss of $11,490.29 and is entitled to receive compensation from the Fair Fund.

45. Through her Morgan Keegan investments, Plaintiff Betty Kilgore suffered a loss of $33,949.26[19] and is entitled to receive compensation from the Fair Fund.

46. Plaintiffs John Pittman, Kenneth Shearer and Betty Kilgore all timely received compensation from the state fund.

47. Under the Administrative Procedure Act, 5 U.S.C. § 706(1), Plaintiffs seek and are entitled to an order declaring that the OCD's repeated failure to file a plan of distribution in relation to the Morgan Keegan Fair Fund is unreasonable and unlawful. Plaintiffs further seek an order compelling the OCD to file a plan of distribution for public comment in accordance with applicable regulations, within 30 days of this Court's order.

## COUNT ONE

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

---

[19] Plaintiff Betty Kilgore had two accounts with Morgan Keegan.

## FAILURE TO ACT TO DISTRIBUTE FAIR FUNDS AS REQUIRED BY SARBANES OXLEY, 15 U.S.C. § 7246(a) AND 17 C.F.R. § 201.1101

48.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

49.     Plaintiffs have been, and will continue to be, adversely affected and aggrieved by the Commission's failure to timely file, and publish for comment, a plan of distribution of Fair Funds associated with the Morgan-Keegan settlement.

50.     The Administrative Procedure Act (the "APA") contemplates a remedy for individuals aggrieved by agency action unlawfully withheld or unreasonably delayed.[20]  Under 5 U.S.C. § 702, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

51.     Pursuant to 5 U.S.C. § 701, the APA applies unless 1) the statute in question precludes judicial review or 2) agency action is committed to agency discretion by law.  Neither exception applies in this matter.

52.     Nothing in Sarbanes-Oxley expresses the intention of Congress to exempt actions, or failure to act, by the SEC from judicial scrutiny under the APA.

53.     Sarbanes-Oxley, including 15 U.S.C. § 7246(a), the Federal Account for Investor Restitution provision, imposes a non-discretionary obligation on the SEC to use civil monetary penalties, disgorged monies and other donations in Fair Funds to compensate victims of securities fraud.  Once the SEC orders the creation of a Fair Fund, regulations promulgated pursuant to Sarbanes-Oxley, 17 C.F.R. § 201.1101(a), specify that SEC officials must submit a proposed plan specifying the manner in which the funds are to be distributed to aggrieved investors within 60 days of receipt of the funds.

---

[20] *See* 5 U.S.C. §§ 701-706

54. Under the Morgan Keegan settlement, the terms needed to create a Fair Fund are expressly set forth. The SEC committed to use of the $100 million in disgorged funds, interest and penalties for the compensation of victims of Morgan Keegan's fraud and thereby to the prompt and efficient distribution of those funds.

55. To date, the SEC has repeatedly failed to file a plan of distribution, and repeatedly disregarded numerous deadlines associated with the creation and filing of such a plan of distribution. In so doing, the SEC has unreasonably delayed and unlawfully withheld a plan of distribution.

56. The SEC's unreasonable delay in withholding a plan of distribution has caused harm to Plaintiffs.

57. Plaintiffs are therefore entitled to relief under 5 U.S.C. §§ 702 and 706(1) and seek an order declaring that the SEC's actions in withholding a plan of distribution are unlawful.

### COUNT TWO

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### INJUNCTIVE RELIEF

58. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

59. Under 5 U.S.C. § 706(1), this Court has the power to "compel agency action unlawfully withheld or unreasonably delayed."

60. To date, the SEC has repeatedly failed to file a plan of distribution, and repeatedly disregarded numerous deadlines associated with the creation and filing of such a plan of distribution in violation of Sarbanes-Oxley and applicable regulations promulgated pursuant to Sarbanes-Oxley.

61. In so doing, the SEC has unreasonably delayed and unlawfully withheld a plan of distribution causing continuing harm to Plaintiffs.

62. Plaintiffs are therefore entitled to relief under 5 U.S.C. §§ 702 and 706(1) and seek an order compelling the OCD to file a plan of distribution for public comment, in accordance with applicable regulations, within 30 days of this Court's order.

## PRAYER FOR RELIEF

63. WHEREFORE, Plaintiffs pray for an order and judgment:

   a. Declaring that that the SEC's actions in withholding a plan of distribution for more than $100 million in the Morgan Keegan Fair Fund are unlawful.

   b. Ordering that the SEC file a plan of distribution for public comment, in accordance with applicable regulations, within thirty (30) days of this Court's order.

   c. Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

   d. Granting such other and further relief as this Court deems just and proper.

Dated: March 28, 2013

Respectfully submitted,

*/s/ Don Barrett*

Don Barrett, MSB No. 2063
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, MS 39095
Tel: (662) 834-2488
dbarrett@barrettlawgroup.com

Thomas M. Sobol, BBO No. 471770
Edward Notargiacomo, BBO No. 567636
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142

Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
ed@hbsslaw.com
(To be admitted *pro hac vice*)

Peter Borkon
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave.
Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
peterb@hbsslaw.com
(To be admitted *pro hac vice*)